UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC JOZLIN and ESTHER JOZLIN

      Plaintiffs,

v.                                                                                  Case No: 11-12749
                                                                            Honorable Julian Abele Cook, Jr.

U.S. BANK NATIONAL ASSOCIATION
and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.

      Defendants.

## ORDER

This case involves a complaint by the *pro se* Plaintiffs, Eric and Esther Jozlin (hereinafter collectively identified as "the Jozlins"), who in a fifteen-count complaint, seek to obtain damages from the Defendants, the U.S. Bank ("U.S. Bank") and Mortgage Electronic Registration Systems ("MERS") on the basis of the following assertions: (1) wrongful foreclosure and declaratory action; (2) breach of contract; (3) a restraining order; (4) quiet title; (5) negligence and gross negligence; (6) intentional infliction of emotional distress; (7) unfair debt collection practices under Michigan law; (8) violation of the Michigan Debt Collection Practices Act; (9) violation of the Deceptive Trade Practices Act; (10) breach of fiduciary duty; (11) punitive damages; (12) fraud; (13) wrongful foreclosure by advertisement; (14) tortious interference; and (15) attorney's fees. The lawsuit was originally filed in St. Clair County Circuit Court of Michigan and subsequently removed to this Court on the basis of its diversity jurisdiction. 28 U.S.C. §§ 1332; 1441.

Now pending before the Court is the Defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. Rule 56.

I.

On June 30, 2005, the Plaintiffs, Eric Jozlin and his wife, Esther, collectively borrowed $162,500.00 at a 6.375% fixed interest rate from the Atlantic Mortgage Corporation. In so doing, they utilized their home as a security for the loan, along with a note and mortgage which provided, in part, that the borrowed monies would be fully repaid on or before July 1, 2035. Contemporaneously with this transaction, Atlantic Mortgage assigned its right to collect the payments from the Jozlins to the U.S. Bank, who consented to act as the servicer of the loan. At the same time, MERS agreed to serve as the nominee for the lender.

According to the U.S. Bank, the Jozlins defaulted on their loan obligation in September 2010. During the fall of 2010, the U.S. Bank conducted an evaluation of the Jozlins' eligibility to obtain a loan modification under the Home Affordable Modification Program ("HAMP"). In December of 2010, the U.S. Bank concluded that the Jozlins would not, and did not, qualify for a loan modification under the HAMP. On February 9, 2011, MERS assigned its mortgage interest to the U.S. Bank which, in turn, proceeded to initiate foreclosure proceedings by advertisement against the Jozlins' home.

According to the U.S. Bank, it caused the notice of the foreclosure sale to be (1) published in the Port Huron Times Herald (Michigan) on May 19th, May 26th, June 2nd, and June 9th of 2011, and (2) placed in a conspicuous place on the front door of the Jozlins' home on May 29, 2011. On June 13, 2011, the Jozlins initiated a lawsuit against the U.S. Bank and MERS in St. Clair Circuit Court of Michigan, seeking to obtain, among other things, a temporary restraining order which, if

granted, would prevent the commencement of the Sheriff's sale that was scheduled to be conducted on June 16, 2011. The St. Clair Circuit Court thereafter issued an order which temporarily restrained the two Defendants from proceeding with the foreclosure sale until arguments from the parties in interest could be heard. However, prior to the date of the scheduled hearing, the U.S. Bank and MERS caused the lawsuit to be removed to this Court on June 24, 2011. When the restraining order expired on June 30, 2011[1] without any further action by the parties or the state court, the Jozlins' home was sold at a Sheriff's auction on August 11, 2011 to Fannie Mae for $169,808.69.

With the parties' dispute now before this Court for a resolution, the U.S. Bank and MERS have submitted a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

II.

Federal Rule of Civil Procedure 56(a) states that a court shall grant a summary judgment if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the movant to demonstrate the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In assessing a summary judgment motion, a court is obliged to examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light most favorable to the non-moving party. *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991). A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. The entry of summary judgment is appropriate if the non-moving party fails to present evidence which is "sufficient to establish the existence of

---

[1] Michigan Court rules provide that "a temporary restraining order granted without notice expires by its terms within such time after entry, not to exceed 14 days." Mich. Court Rules 3.310(B)

an essential element to its case, and on which it will bear the burden of proof at trial." *Vereecke v. Huron Valley School Dist.,* 609 F.3d 392, 399 (6th Cir.2010) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

Inasmuch as this action was brought in this federal court on the basis of its diversity jurisdiction, a court must apply the same substantive law that would be applied if the lawsuit had been filed in a state court in which the federal court is located. *Equitable Life Assur. Soc. of U.S. v. Poe,* 143 F.3d 1013, 1016 (6th Cir.1998). With recognition that this Court has diversity jurisdiction and the Jozlins have asserted state causes of action in support of their positions in this controversy, Michigan law will be applied to the substantive issues of this case.

### III.

The Defendants contend that they are entitled to relief because there is no genuine issue of a material fact to be resolved in this lawsuit. Accordingly, each of the Jozlins' claims will be addressed in turn.

### A.

In the Jozlins' first count, they contend that neither of the Defendants applied the correct foreclosure procedures when they (1) refused to provide them with proof of the actual note holder upon request; (2) did not comply with the existing statutory notice provisions regarding foreclosure; and (3) declined to proffer a "wet ink" mortgage.

Contrary to the Jozlins' assertions, the state statute, upon which the Defendants relied in the processing of the now-challenged foreclosure and sale proceedings, does not require the presentation of the original note or the so-called "wet ink" mortgage. Under Mich. Comp. Laws. § 600.3204, a party may foreclose on a mortgage by advertisement if all of the following circumstances exist:

4

(1) A default in a condition of the mortgage has occurred, by which the power to sell became operative.

(2) An action of proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been discontinued; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.

(3) The mortgage containing the power of sale has been properly recorded.

(4) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

The Defendants submit that (1) all of the above-identified requirements for a foreclosure by advertisement have been satisfied, and (2) the prescribed foreclosure steps were conducted by them in full conformity with Michigan law. An examination of the record indicates that (1) the Jozlins did default in their obligations under the mortgage, and (2) the Defendants (through the U.S. Bank) did post foreclosure notices at the site of the subject property, and caused the foreclosure notices to be published in a local newspaper.

The Court finds that the Defendants' efforts to satisfy the foreclosure measures by advertisement according to the requirements of Mich. Comp. Laws. § 600.3204 were successful. Inasmuch as the statute does not require a presentation of the original note or a "wet ink" mortgage, this allegation by the Jozlins fails to state a claim upon which relief can be granted. The Defendants are granted a summary judgment on the remaining claims in Count One because the Jozlins have failed to raise a genuine issue of a material fact.

B.

The now-challenged second count relates to a claimed breach of contract by the Defendants. In particular, it is the Jozlins' contention that the Defendants (1) failed to comply with the contractual notice provisions regarding foreclosure, (2) sought to obtain monies that were not due and owing at the time of their demand, and (3) the disparity between the value of the mortgage and the price that was realized at the foreclosure sale resulted in an unwarranted unjust enrichment. To support their argument, the Jozlins' point to paragraph 22 of the mortgage contract which provides that:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. (Compl. Ex. A, ECF No. 1)

The Jozlins assert that the Defendants wrongfully and without justification failed to provide them with the contractually required notice of the acceleration of their debt. Despite this assertion, the Defendants have produced a letter (dated September 13, 2010) that was transmitted to the Jozlins

by certified mail which facially complies with the parties' contractual obligations in Paragraph 22. Significantly, the Court notes that the Jozlins, in their response to the Defendants' motion for summary judgment, do not dispute their receipt of the September 13th, 2010 letter. Still further, the Jozlins acknowledge having received correspondence wherein the U.S. Bank had requested them to make their mortgage payments current during their efforts to modify the mortgage commitments under HAMP. In summary, it is clear that the claim by the Jozlins on this issue (i.e., the Defendants breached their contract relating to acceleration and notice) have failed to raise a genuine issue of a material fact. Therefore, the Defendants are entitled to summary judgment on this issue.

The Court also finds that the sums of money, which had been declared by the U.S. Bank to be due and owing, were appropriate under the parties' acceleration clause. Furthermore, the Court concludes that the U.S. Bank (1) retained its right to accelerate the payment obligations following the default by a contracting party, and (2) complied with the contractual notice requirements as set forth in Paragraph 22. The Court also notes that (1) the participation by the U.S. Bank in HAMP was entirely voluntary, and (2) the HAMP provides no private cause of action for those homeowners whose modifications fail while their mortgage is in default.

Finally, the Court declines to find that the U.S. Bank was unjustly enriched by the foreclosure sale at which their home was sold to Fannie Mae for $169,808.69. Given that the original mortgage was for $162,500.00 at a 6.375% fixed interest rate, the foreclosure sale price does not constitute an unjust enrichment. For these reasons, this count cannot survive U.S. Bank's motion for summary judgement.

C.

The third count by the Jozlins involves a request by them for a restraining order that would prevent (1) an authorized governmental official from completing the foreclosure sale of their home, and (2) the Defendants from taking possession and control of their home. However, in noting that the Court has already resolved the issues involved herein by granting a motion for summary judgment in favor of the Defendants, the Jozlins' request for a temporary restraining order must be denied for mootness.

### D.

The Jozlins' fourth count is to quiet title. However, for the reasons that have been previously discussed, the Jozlins' request must be denied for mootness.

### E.

The fifth and sixth counts by the Jozlins involve claims for negligence, gross negligence, and an intentional infliction of emotional distress. According to Michigan law, a tort action must be based on a breach of duty that is distinct from a breach of contract, unless the aggrieved party can establish a cognizable legal duty which is independent of the contractual duties. *See, e.g. International Harvester Credit Corp. v. Wilkie*, 695 F.2d 231, 234 (6th Cir.1982) (although actionable negligence may arise out of contractual relationship, common-law basis of action independent of any contractual undertaking must be established); *Rindaldo's Const. Corp. v. Michigan Bell Tel. Co.,* 454 Mich. 65, 78-79 (Mich. 1997) (where duties owed to plaintiff by defendant arose solely out of parties' contractual relationship and not from any independent legal obligation, there is no cause of action for tort claim).

With respect to the Jozlins' claims for negligence, any duty owed to them by the Defendants arose from the parties' mortgage contract. The gist of their claims under this negligence theory is that

8

neither of the Defendants properly exercised their contractual rights under the mortgage. Since the Jozlins have not alleged a violation of a legal duty which is separate and distinct from the contractual obligations between the parties, their tort claims in negligence are without any merit in law.

With respect to the Jozlins' claim on the basis of an unjustified intentional infliction of emotional distress, it is their position that the "Defendant's [sic] intentional and/or reckless actions reflect [their] sinister desire to confuse and, if necessary, intimidate [them] in an effort to cause the wrongful foreclosure and for [them] to ultimately lose their home."

To establish the tort of an intentional infliction of emotional distress, an aggrieved plaintiff must establish the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *See, e.g. Haverbush v. Powerlson,* 217 Mich. App. 228 (Mich. Ct. App. 1996). The complained of conduct must "go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community" *Graham v. Ford* 237 Mich. App. 670, 674 (Mich. Ct. App. 1999). While going through a foreclosure is, doubtlessly, an emotionally stressful experience for a home owner, the challenged conduct here does not rise to this demanding level. Thus, the Jozlins' claim for the Defendants' intentional infliction of emotional distress upon them is without merit. Hence, the Defendants are entitled to summary judgment relief on this issue.

F.

In advancing their seventh, eighth, and ninth claims, the Jozlins point to the Defendants' allegedly unreasonable debt collection practices under Michigan law, and for their violations of the Fair Debt Collection Practices Act.

With respect to their seventh claim, it is the Jozlins view that the Defendants violated Michigan's Consumer Protection Act ("MCPA"). However, this claim must fail because residential mortgage loan transactions - such as those that are found in the instant case - are exempt from the Michigan statute. Specifically, § 445.904(1)(a) of MCPA states that it does not apply to "a transaction or conduct specifically authorized under laws administered by a regulatory body or officer acting under statutory authority of this state or the United States." Those Michigan courts and federal courts which have applied Michigan law have consistently held that the MCPA does not apply to those claims which have arisen out of residential mortgage loan transactions. *See, e.g. Newton v. Bank West*, 262 Mich. App. 434 (residential mortgage loan transactions are exempt from MCPA); *Mills v. Equicredit Corp.*, 294 F.Supp.2d 903 (E.D.Mich. 2003), aff'd, 172 F. App'x 652 (6th Cir.2006).

The eighth and ninth claims by the Jozlins relate to the Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. However, as noted by the Defendants, this federal statute does not apply to an entity that attempts to collect its own debt. 15 U.S.C. § 1692A(6)(f). *See, e.g. Montgomery v. Huntington Bank* 346 F.3d 693, 699 (6th Cir.2003) (bank is not debt collector for purposes of FDCPA nor is it subject to this Act when collecting its own accounts).

It is not disputed that the U.S. Bank acquired the debt on August 1, 2005. At the time of its acquisition, the Jozlins were not in default. With recognition that the FDCPA does not apply to these Defendants, the Defendants' motion for summary judgment on these counts must be granted.

G.

The tenth claim by the Jozlins applies to the Defendants' breach of fiduciary duty in violation of Mich. Comp. Laws § 440.3307. However, Michigan law does not recognize a fiduciary duty owed

10

by lenders to borrowers in mortgage financing. *See, e.g. Farm Credit Services of Michigan's Heartland, P.C.A. v. Weldon* 232 Mich.App. 662, 680 ("A fiduciary relationship, which generally does not arise within the lender-borrower context, exists when there is a reposing of faith, confidence, and trust and the placing of reliance by one on the judgment and advice of another.) *Forsythe v. BancBoston Mortgage Corp.,* 135 F.3d 1069, 1077 (6th Cir.1997) ("the great weight of authority is that while the relationship between a mortgagor and mortgagee is often described as one of trust, technically it is not of a fiduciary character"). Significantly, the Jozlins have never contended that their relationship with the Defendants created any type of a fiduciary duty. Therefore, the Defendants' motion for summary judgment on this count must be granted.

H.

The Jozlins' eleventh count is for punitive damages. However, the prior determinations by this Court support the now-obvious conclusion that an order of dismissal must be entered in favor of the Defendants for reasons of mootness.

I.

The twelfth claim alleges that the Defendants drafted bogus foreclosure documents, all of which caused the Jozlins to suffer unwarranted injuries. To adequately plead fraud in a complaint, a party must comply with Federal Rule of Civil Procedure 9(b) which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy the particularity requirements of Rule 9(b), a plaintiff, at minimum, must "allege the time, place, and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984). The Sixth Circuit has held that the complaint must "(1) specify the

11

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.,* 547 F.3d 564, 570 (6th Cir.2008). The threshold test is "whether the complaint places the defendant on sufficient notice of the misrepresentation, allowing the defendant . . . .to answer, addressing in an informed way the [plaintiff's] claim of fraud. *Coffey v. Foamex,* 2 F.3d 157, 162 (6th Cir.1993).

The Jozlins' complaint does not contain the level of particularity with which to maintain a claim for fraud. Their complaint alleges that the U.S. Bank drafted bogus foreclosure documents and made misrepresentations to them regarding the status of their mortgage. However, there is no reasonably precise identification of the (1) allegedly fraudulent statements, (2) the speaker, and (3) where, when and under what circumstances the claimed misrepresentations were made. Compl. ¶ ¶74-80. *See Gupta v. Terra Nitrogen Corp.* 10 F. Supp. 2d 879 (N.D. Ohio 1998) *aff'd by Gupta v. Terra Nitrogen Corp.,* 202 F.3d 268 (6th Cir.1999) (dismissing plaintiff's claim of fraud since complaint did not identify specific statements that were allegedly fraudulent, the speaker and/or when false statements were made.) The Jozlins' assertion in the complaint that the U.S. Bank committed fraud is too vague and generic to meet the requisite particularity that Rule 9(b) requires. Hence, the Jozlins' allegations of fraud are insufficient, and the Defendants' motion for summary judgment on this count is granted.

J.

The Jozlins' next claim is for wrongful foreclosure by advertisement. However, as reasoned above, this Court finds that the Defendants fully complied with the Michigan law which regulates foreclosure by advertisement. Hence, there is no merit to this claim on this issue.

12

K.

The fourteenth count by the Jozlins is for tortious interference, claiming that their ability to cure the default was thwarted by the Defendants and their attorneys (Schmeiderman & Sherman, P.C. and Trott & Trott, P.C.) Compl. ¶¶89-94. Here, an examination of the record reveals that the Jozlins have not filed any claims against either of the two above named law firms. To the extent that they claim to have been injured by the direct tortious interference of these corporate Defendants, the law in Michigan precludes a party's attempt to assert any tort claims that are grounded in contract, unless there is evidence of a cognizable legal duty which is independent of any contractual duties.

Additionally, Michigan courts and federal courts which apply Michigan law have held that a plaintiff who is party to a contract cannot maintain a cause of action for tortious interference against another party to the contract. *See, e.g. Derderian v. Genesys Health Care Sys.,* 263 Mich.App. 364; *Ennis v. Wells Fargo Bank, N.A.* 2011 WL 1118669 (W.D.Mich. 2011). Therefore, the Defendants' motion for summary judgment on this count is granted.

L.

The final claim by the Jozlins is for attorneys' fees. For the reasons that have been asserted hereinabove wherein orders of dismissal and summary judgment have been issued, the Jozlins' quest for attorney fees must be denied for mootness.

IV.

For the reasons that have been set forth above, the Defendants' motion for summary judgment is granted in its entirety. (Docket Entry 10).

IT IS SO ORDERED.

Date: January 4, 2012							s/Julian Abele Cook, Jr.
									JULIAN ABELE COOK, JR.
									U.S. District Court Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on January 4, 2012.

									s/ Kay Doaks
									Case Manager